## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SOPHIA IVY**, individually and
on behalf of a class of similarly
situated persons,

      Plaintiff,

v.                                   Case No. 8:25-cv-01604-WFJ-NHA

**TOMOCREDIT, INC.**,

      Defendant.

_____/

## <u>ORDER</u>

Before the Court is Defendant TomoCredit Inc. d/b/a Tomo Card's
("Defendant") Motion to Compel Arbitration and Stay Further Proceedings. Dkt. 16.
Plaintiff Sophia Ivy ("Plaintiff") has responded in opposition. Dkt. 21. Upon careful
consideration, the Court grants Defendant's Motion and stays this case.

## BACKGROUND

On April 28, 2021, Plaintiff, an individual, allegedly submitted an application
with Defendant, a consumer credit card provider, for use of its services ("Plaintiff's
Application"). Dkt. 16 at 2, 4; Dkt. 16-1 ¶ 9. To submit this application, Plaintiff
was required to click a box indicating that she had reviewed and agreed to the
TOMOCREDIT WEBSITE AND MOBILE APPLICATION TERMS OF USE

("Terms of Use"), Dkt. 16 at 4; Dkt. 16-1 ¶ 5, which included the following arbitration notice:

> **THESE TERMS OF USE CONTAIN AN ARBITRATION PROVISION WHICH WILL APPLY TO YOU UNLESS YOU REJECT IT AS PROVIDED BELOW. IF APPLICABLE, THE ARBITRATION PROVISION WILL SIGNIFICANTLY AFFECT YOUR RIGHTS IF A DISPUTE ARISES BETWEEN YOU AND TOMOCREDIT. FOR EXAMPLE, YOU WILL NOT BE ABLE TO BRING OR PARTICIPATE IN A CLASS ACTION RELATING TO MATTERS ARISING UNDER THESE TERMS AND CONDITIONS.**

Dkt. 16-1 at 2. Further in the document, the terms of this arbitration provision were elaborated upon ("Arbitration Agreement"). *Id.* at 6–10. The Terms of Use also included an opt-out provision for the Arbitration Agreement, which Defendant states Plaintiff never exercised. Dkt. 16 at 5; Dkt. 16-1 at 6 ("**RIGHT TO REJECT**: You may reject this Arbitration Provision by mailing a personally signed rejection notice to TomoCredit.").

A previous case between Plaintiff and Defendant, *Ivy v. TomoCredit, Inc.*, Case No. 24-cv-01904-TPB-TGW (M.D. Fla.), arose due to the alleged receipt of violative unsolicited communications. Dkt. 1 ¶¶ 21–22; Dkt. 16 at 6; Dkt. 21 at 1–2. This case was resolved on August 26, 2024, through the signing of a Confidential Settlement Agreement and Release ("Prior Agreement"). Dkt. 1 ¶ 23; Dkt. 16 at 6; Dkt. 21 at 2; Dkt. 21-1. The present case arises from further unsolicited

communications allegedly received since the signing of the Prior Agreement. Dkt. 1 ¶ 16; Dkt. 16 at 1–2; Dkt. 21 at 2.

Plaintiff brought a Complaint against Defendant. Therein, Plaintiffs assert the following causes of action: Violation of the Telephone Consumer Protection Act ("TCPA") and C.F.R. § 64.1200(c) (Count I); Violation of the TCPA and C.F.R. § 64.1200(d) (Count II); Violation of the Florida Telephone Solicitation Act ("FTSA") (Count III).[1] Dkt. 1 ¶¶ 71–93. Prior to filing any answer or motion to dismiss, Defendant filed the instant Motion to Compel Arbitration and Stay Further Proceedings, wherein Defendant seeks to compel arbitration based upon the Arbitration Agreement. Dkt. 16. Plaintiff filed a Response, arguing that the Arbitration Agreement is invalid, that the claims are outside the scope of such agreement, and that Defendant waived its right to compel arbitration. Dkt. 21.

## LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of [arbitration] agreements." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, "any doubts

---

[1] Plaintiff also includes a Count IV, but this is merely a request for injunctive relief. Dkt. 1 ¶¶ 94–101.

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

The Court considers the following factors in determining whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). "[T]he Court may consider matters outside of the four corners of the complaint" in ruling on these issues. *KWEST Commc'ns, Inc. v. United Cellular Wireless Inc.*, No. 16-20242-CIV, 2016 WL 10859787, at *5 (S.D. Fla. Apr. 7, 2016), *report and recommendation adopted*, No. 16-20242-CIV, 2016 WL 10870449 (S.D. Fla. June 28, 2016). And when deciding whether the parties have agreed to arbitrate certain matters, the Court generally applies "ordinary state-law principles that govern the formation of contracts." *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## DISCUSSION

The Arbitration Agreement explains that any "disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof" are "for a court and not an arbitrator to decide." Dkt. 16-1 at 7. Therefore, the Court properly analyzes the aforementioned factors of 1) validity, 2) arbitrability, and 3) waiver. *See Williams*, 2008 WL 686222, at *4.

### I.    Validity of Written Agreement to Arbitrate

The first factor the Court will consider in determining whether to compel arbitration is "whether a valid written agreement to arbitrate exists." *Id.* Plaintiff contends that a "valid agreement to arbitrate does not exist." Dkt. 21 at 7. The Court disagrees.

A valid contract requires "offer, acceptance, consideration[,] and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004); *Emps. Ins. of Wausau*, 251 F.3d at 1322 ("[S]tate law governs the interpretation and formation of [arbitration] agreements.").

Here, all four requirements are clearly satisfied. Defendant, as a consumer credit card provider, offered Plaintiff a credit card subject to the Terms of Use, including the arbitration agreement. Dkt. 16 at 3, 10. Plaintiff accepted this offer through the submission of Plaintiff's Application, which required the clicking of a box indicating the Terms of Use were reviewed and agreed to. *Id.* at 4, 10–11; Dkt.

16-2 ¶ 5; *see* Dkt. 21 at 9 (asserting that Defendant failed to produce sufficient information to establish acceptance, but not materially challenging Defendant's claims regarding Plaintiff's Application); *see also Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022) (citing *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017)) ("[A] clickwrap agreement occurs when a website directs a purchaser or user to the terms and conditions of the sale and *requires* the user to click a box to acknowledge that they have read those terms and conditions. These agreements are generally enforceable.").

The consideration, specifically regarding the Arbitration Agreement, consisted of a mutual agreement to submit to arbitration. *See* Dkt. 16 at 11; Dkt. 16-1 at 6–10; *see also Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) (citing *Lemmon v. Lincoln Prop. Co.*, 307 F. Supp. 2d 1352 (M.D. Fla. 2004)) ("[T]he agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same."). Lastly, as to the specification of essential terms, the Court finds that all essential terms related to arbitration are sufficiently specified in the Terms of Use. Dkt. 16-1 at 6–10; *see* Dkt. 21 at 7–9 (asserting that a valid agreement does not exist, but not specifically challenging the

sufficiency of the terms of the Arbitration Agreement). Therefore, a valid contract exists with respect to the Arbitration Agreement.[2]

## II.     Arbitrability of Issue

The next factor the Court will consider in determining whether to compel arbitration is "whether an arbitrable issue exists." *Williams*, 2008 WL 686222, at *4. Plaintiff contends that her claims "fall outside the scope of the arbitration provision in Defendant's Terms of Use, even *if* Plaintiff had consented to them." Dkt. 21 at 7. The Court disagrees.

"It has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability," which may only be overcome by it being clearly established that the arbitration clause does not cover the dispute in question. *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."); *see Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) ("The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration

---

[2] The first arbitration factor is thus established unless the arbitration provision were to be unconscionable. *See Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014) ("[W]hen a litigant seeks to avoid enforcement of a requirement to proceed with arbitration . . . the challenging party must establish that the arbitration agreement is both procedurally and substantively unconscionable."). Although Defendant provides a defense against a claim of unconscionability, Dkt. 16 at 16–20, Plaintiff does not raise the issue of unconscionability, Dkt. 21.

agreement."). "Doubts should be resolved in favor of coverage." *AT&T Techs.*, 475 U.S. at 650.

Here, Plaintiff agreed that "either party may elect to arbitrate—and require the other party to arbitrate—any Claim under the [Terms of Use]." Dkt. 16-1 at 2. A "Claim" is defined in the Terms of Use as follows:

> A "Claim" means any legal claim, dispute or controversy between you and us that arises from or relates in any way to these Terms of Use, including, but not limited to, any dispute arising before the date of this Arbitration Provision and any dispute relating to: [various circumstances]. . . . "Claim" has the broadest possible meaning. It includes initial claims, counterclaims, cross-claims, third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Provision. It also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief.[3]

Dkt. 16-1 at 7. Plaintiff's present claims are alleged violations of the TCPA and FTSA, related to unwanted communications from Defendant, Dkt. 1 ¶¶ 71–93, which are directly associated with Plaintiff's Application and the resulting Terms and Conditions, Dkts. 16-1, 16-2.

---

[3] Plaintiff mistakenly asserts that "the arbitration provision is limited to only claims arising *before* the date of the arbitration provision and from the Terms of Use." Dkt. 21 at 10 (emphasis added). This fundamentally misunderstands what is being referenced in the Terms of Use, which states that a "Claim" is "any legal claim, dispute or controversy" that "arises from or relates in any way to these Terms of Use." Dkt. 16-1 at 7. From here, the Terms of Use then provide an evidently *non-exhaustive* list of applicable circumstances, stating that "Claim" is "including, but not limited to" any dispute "arising before the date of this Arbitration Provision *and* any dispute relating to: [various circumstances]." *Id.* (emphasis added). The Court construes this to mean that a "Claim" could include disputes arising before the Arbitration Agreement, disputes relating to the various circumstances listed, or any other "legal claim, dispute or controversy" that "arises from or relates in any way to these Terms of Use." *Id.* This understanding would be consistent with the later clarification in the same paragraph that "Claim" is to have "the broadest possible meaning." *Id.* Plaintiff's interpretation of this section of the Arbitration Agreement is disconnected from its plain meaning.

Plaintiff failed to proffer "forceful evidence of a purpose to exclude the claim." *AT&T Techs.*, 475 U.S. at 650. Therefore, the presumption in favor of arbitrability endures, rendering Plaintiff's claims clearly subject to arbitration.

### III.    Waiver of Right to Arbitrate

The final factor the Court will consider in determining whether to compel arbitration is "whether the right to arbitrate has been waived." *Williams*, 2008 WL 686222, at *4. Plaintiff contends that "Defendant has waived any right that it could have had to compel arbitration." Dkt. 21 at 5. The Court disagrees.

Here, Plaintiff's argument regarding Defendant's alleged waiver relies solely upon the Prior Agreement. Dkt. 21 at 6–7. The Prior Agreement, as filed by Plaintiff, is heavily redacted. Dkt. 21-1. The redactions are so extensive as to make it unusable, as the Court lacks context for the minimal unredacted sections. Accordingly, while the Court considers the Prior Agreement, the extent of the redactions renders it of no use in resolving the issues before the Court.

Therefore, because the Court finds no material evidence that Defendant waived its right to compel arbitration, all relevant factors lead the Court to compel arbitration.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion to Compel Arbitration and Stay Further Proceedings, Dkt. 16, is **GRANTED**.

(2) This case is **STAYED** pending resolution of the arbitration process.

(3) The Clerk is **DIRECTED** to administratively close this case during the pendency of the stay.

**DONE AND ORDERED** at Tampa, Florida, on October 29, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record